UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD REDDICK | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 20 CV 445 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In January 2017, Donald Reddick pleaded guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Later that year, this court sentenced him to 135 months' imprisonment and three years' supervised release. Reddick's appeal from his sentence was dismissed. He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons discussed below, Mr. Reddick's petition [1] is denied.[1]

## BACKGROUND

### I.     Criminal Proceedings

In the span of eight days, Mr. Reddick robbed a Waukegan branch of Fifth Third Bank twice. On September 10, 2015, a grand jury indicted Reddick for two counts of bank robbery in violation of 18 U.S.C. § 2113(a) [*7]. Reddick entered a "blind" plea of guilty to these charges on January 11, 2017 [*32, *33]. In his sworn plea declaration, Reddick admitted that, on August 3, 2015, he used intimidation to seize $1,730 from a bank teller, and returned to that same branch one week later, again using intimidation to rob the bank of an additional $7,470. (Plea Declaration [*33] at 2–3.)

Following Mr. Reddick's guilty plea, the probation office prepared a presentencing investigation report ("PSR"), using the 2016 version of the Sentencing Guidelines. (PSR [*37] at

---

[1]     Citations to Reddick's criminal docket (No. 1:15-cr-00481-1) are denoted with an asterisk. All other citations are to Reddick's civil docket (No. 1:20-cv-00445).

7, 9, 18, 28.) The probation officer found that Reddick qualified as a career offender under U.S.S.G. § 4B1.1. (PSR [*37] at 8.) Specifically, the PSR stated that Reddick was at least 18 years old at the time of the robberies, the robberies were crimes of violence, and Reddick had at least two prior felony convictions for crimes of violence or controlled substance offenses. (*Id.*) As prior convictions qualifying Mr. Reddick for the enhancement under § 4B1.1, the PSR identified a 1995 Illinois controlled substance violation and a 2005 conviction for bank robbery under 18 U.S.C. § 2113(a). (*Id.*) Mr. Reddick's criminal history brought his total offense level to 32. Were it not for his prior offenses, the total would have been 27. (*Id.*) The PSR subtracted three points for Reddick's acceptance of responsibility, resulting in a total offense level of 29. (*Id.* at 9.) Mr. Reddick also had prior convictions for other crimes, including a 1997 Wisconsin sex offense, and a resulting criminal history score of 14, placing him in the criminal history category of VI.[2] (*Id.* at 18.) The statutory maximum for Mr. Reddick's crime was 20 years of imprisonment, and—based on a total offense level of 29 and criminal history category of VI—his guideline imprisonment range was 155 to 188 months. (*Id.* at 28.)

During his criminal proceeding, Mr. Reddick objected to his career offender status through counsel and in *pro se* filings. He argued that two of the convictions the government identified as qualifying offenses did not count: the 1997 sex offense and the 2005 bank robbery conviction [*50, *51, *60]. He urged that his drug offenses were in the distant past, and he is therefore not "a person the Career Offender Enhancement was meant to cover." (Reddick Sentencing Mem. [*60] at 3.) Noting that the court is not obligated to follow the sentencing guidelines, Mr. Reddick requested a term of 100 months imprisonment. (*Id.* at 2, 8.)

At the sentencing hearing on November 28, 2017 Reddick's counsel did not object to his 1994 controlled substance offense counting as a career offender qualifier, but did object to the

---

[2] This categorization would have been no different if he had not been considered a career offender.

use of his prior bank robbery conviction and sex offense.[3]  (Tr. of Sentencing H'rg [*79] at 6:3–8:16.)  Regarding the prior bank robbery, Reddick's counsel argued that, although robbery is an enumerated predicate offense under the sentencing guidelines, bank robbery is not.  (*Id.* at 6:6–25.)  Counsel contended that bank robbery is a distinct crime, and that absence of that offense from the list that appears in U.S.S.G. § 4B1.2(a)(2) is evidence that "the legislature" intended its exclusion.[4]  The court noted that it did not need to reach that issue because Mr. Reddick had two qualifying prior offenses even without the bank robbery.  (*Id.* at 9:2–4.)  As for the sex offense, Mr. Reddick argued that the fourteen-year-old victim, though incapable of consenting as a matter of law, had consented in fact.  (*Id.* at 7:19–21.)  The court rejected this contention, noting that, by definition, sex with a 14-year-old is a crime of violence under Wisconsin law.  (*Id.* at 7:23–85.)  The court found that at least two of these three offenses qualified Reddick as a career offender under the guidelines.  (*See* Statement of Reasons [*67] at 1 (indicating that the court adopted the PSR without change).)  Recognizing mitigating circumstances, including Mr. Reddick's own poor health and that of members of his family, the court sentenced Reddick to a below-guidelines term of imprisonment of 135 months followed by three years' supervised release.  (Tr. of Sentencing H'rg [*79] at 32:11–33:9.)

      Reddick submitted a notice of appeal on November 28, 2017.  His appellate attorney found no non-frivolous issue for appeal and moved to withdraw her representation under *Anders v. California*, 386 U.S. 738 (1967).  The Seventh Circuit granted that motion over Reddick's objection, agreeing with counsel that his proposed challenges to the sentence were frivolous. *United States v. Reddick*, 759 F. App'x 512, 513–14 (7th Cir. 2019).  The appellate court noted that (1) Mr. Reddick's 135-month prison term fell within the applicable statutory limits; (2) this

---

[3]    Reddick also objected to the use of a 1991 controlled substance conviction, which the parties agreed did not count as a qualifying prior offense.  (Tr. of Sentencing H'rg [*79] at 10.)

[4]    Whether this was a reference to Congress or to the Sentencing Commission is not clear to the court.  (*See generally* Reddick Sentencing Mem. [*60].)

3

court correctly applied the career-offender enhancement to Reddick's sentence; (3) Reddick's prior bank robbery would be considered a crime of violence either under the 2014 version of the guidelines (in effect at the of the offense) or the 2016 version (used by the court at sentencing); and (4) Reddick's sentence was substantively reasonable. *Id.* Reddick argued that his career-offender enhancement for prior crimes violated the Ex Post Facto Clause because he committed the offenses before the guideline definition of "crime of violence" was amended to include them; the Court of Appeals found that argument frivolous. *Id.* at 514. On February 7, 2019, The Seventh Circuit dismissed Mr. Reddick's appeal. *Id.*

## II.     Section 2255 Proceedings

On January 21, 2020, Mr. Reddick timely filed the instant petition under 28 U.S.C. § 2255 [1]. The petition identifies four grounds for relief: (1) this court did not specifically identify the prior convictions that qualified him as a career offender; (2) the Ex Post Facto clause prohibits the use of his convictions for third degree assault and bank robbery because they occurred before the 2016 guidelines went into effect; (3) the court failed to address his arguments against a career-offender enhancement and regarding restitution, including his argument that the 1994 controlled substance conviction should not count as a qualifying offense; and (4) the court and government applied the wrong methodology for considering the use of his prior narcotics convictions for sentencing calculation purposes. (Def.'s Pet. [1] at 9–19.)

On March 16, 2021, Mr. Reddick made an additional submission, titled "Supplemental Claim of Actual Innocence." Despite its title, in that document, Mr. Reddick does not argue he is actually innocent but does argue that new case law should be applied to issues regarding his sentencing. (*Id.*; Pet.'s Supp. Claim of Actual Innocence [29].)

## **DISCUSSION**

An individual in federal custody may file a petition under 28 U.S.C. § 2255, which allows for relief only where there has been "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."

4

*Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (quotation marks omitted). Section 2255 provides "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Before the district court reopens his case, the defendant must "state the facts supporting each ground." *See* Rules Governing § 2255 Proceedings 2(b)(2). Although the statute entitles the defendant to an evidentiary hearing if he "alleges facts that, if proven, would entitle him to relief," *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001), such a hearing is not necessary "if the petitioner makes conclusory or speculative allegations rather than specific factual allegations." *United States v. Coscia*, 4 F.4th 454, 482 (7th Cir. 2021).

I.  **Ineffective Assistance of Counsel**

The government argues that Mr. Reddick has procedurally defaulted on several of his arguments regarding his career offender status, so he cannot relitigate the issue absent changed circumstances, which, the government contends, "he does not argue." (Gov.'s Resp. [17] at 10.) On the government's reading of Mr. Reddick's briefs, "[h]e does not allege that his trial court or appellate attorneys were ineffective: indeed he gives no reason at all for now raising these issues via a § 2255 petition." (*Id.* at 8.)

The court itself does not read Mr. Redding's filings so narrowly. Adopting a liberal construction, the court reads his petition as raising an ineffective assistance of counsel claim under the Sixth Amendment. *See Osagiede v. United States*, 543 F.3d 399, 405–05 (7th Cir. 2008) (instructing courts to "accord a liberal construction" to *pro se* petitions). Mr. Reddick's petition alleged that his Sixth Amendment rights were violated (Def.'s Pet. [1] at 17) and argues that he wished to present arguments for mitigation at sentencing, many of which his counsel did not adopt (*id.* at 9–10, 15–18). In his reply brief, Mr. Reddick made clear that he believed "[a]t every step in these proceedings Petitioner has been denied effective assistance of counsel."

5

(Pet.'s Reply [24] at 1–3.) The court will address his ineffective assistance of counsel claim on the merits.

To bring a successful ineffective assistance of counsel claim, an individual must show that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The first prong is "highly deferential" to counsel, who is presumed to have made reasonable strategic judgments. *Id.* at 689. *Strickland*'s second prong requires an individual to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The petition might be dismissed for either reason; that is, the court need not determine whether counsel was deficient before examining whether the defendant suffered prejudice as a result of the alleged deficiencies. *Id.* at 697.

**A.     Career-Offender Status**

The bulk of Mr. Reddick's submissions concern his career-offender status. He argues that his counsel did not raise all of his arguments concerning each of the three prior convictions that the government presented to the court as qualifying offenses. The court addresses his arguments concerning each qualifying conviction in turn.

**1.     Prior Illinois Controlled Substance Offense**

In his petition, Mr. Reddick argues that the court improperly assessed his 1995 conviction for delivery of a controlled substance in violation of 720 ILCS 570/401 as a qualifying conviction for Career Offender status under U.S.S.G. § 4B1.1. (Def.'s Pet. [1] at 11.) Although Reddick maintains that he was charged for mere "possession" of a controlled substance, the record is clear that Mr. Reddick was convicted of "Delivery of a Controlled Substance." (PSR [*37] at 14.) Reddick contends that this 1995 conviction does not qualify because the definition of a controlled substance offense in § 4B1.2(b) does not list the word "sell" or "sale" in in its definition of a controlled substance offense. This argument is foreclosed by binding precedent. The Seventh Circuit has made clear that a conviction for "Delivery of a Controlled Substance" under 720 ILCS

6

570/401 is a controlled substance offense within the meaning of § 4B1.1. *See United States v. Johnson*, 47 F.4th 535, 544 (7th Cir. 2022); *see also United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017) (holding that "delivery" as used in 720 ILCS 570/401 is as narrow as "distribut[e]" and "dispens[e]" as used in U.S.S.G. § 4B1.2(b)). Mr. Reddick's counsel was not ineffective for failing to raise this meritless claim.

In his more recent submission to the court [29], Mr. Reddick again presses this point, urging that new Seventh Circuit case law supports his position. Mr. Reddick argues that the Seventh Circuit's holding in *Ruth v. United States*, 966 F.3d 642 (2020), *cert. denied* 141 S. Ct. 1239 (2021), "effectively overrul[ed]" *Redden*, which the Seventh Circuit cited when rejecting Reddick's career-offender status on direct appeal. The government responds that Mr. Reddick has procedurally defaulted on this claim, as he did not show cause for his failure to raise the issue earlier in the litigation. (*See* Gov.'s Resp. to Mar. 1, 2021 Filing [30] at 5–7.) The court recognizes the procedural defects of Mr. Reddick's new claim, but notes that it fails substantively as well. Mr. Reddick is mistaken about the holding of *Ruth*, where the court addressed the same Illinois statute at issue here: 720 ILCS 570/401. In *Ruth*, the defendant's prior Illinois drug offense had two effects on the petitioner's sentence: (1) it enhanced his sentence as a "felony drug offense" under 21 U.S.C. § 851, and (2) it qualified as a "controlled substance offense" under U.S.S.G. § 4B1.1. *Id.* at 644. *Ruth* held that a conviction under 720 ILCS 570/401 does not qualify as a "felony drug offense" for the purposes of a § 851 enhancement--but *does* qualify as a "controlled substance offense" under § 4B1.1. *Id.* at 654. Only this latter part of *Ruth* would be relevant to Mr. Reddick's case,[5] and *Ruth* plainly states that "a cocaine conviction under Illinois law is a controlled substance offense according to the career offender guideline." *Id.* Contrary to Mr. Reddick's contentions, both *Ruth* and *Redden* instruct that a violation of 720 ILCS 570/401 is a

---

[5] Mr. Reddick appears to misunderstand the difference between the two distinct parts of *Ruth*, as his most recent reply brief rehashes arguments concerning 21 U.S.C. § 851, which, as noted above, is not relevant here. (*See* Pet.'s Second Reply [32] at 1–6.)

qualifying conviction under § 4B1.1. *See Redden*, 875 F.3d at 375. His claim thus fails procedurally and on the merits.

2.  **Prior Wisconsin Sex Offense**

Next, Mr. Reddick argues that his counsel should have challenged the court's finding that his third-degree sex offense qualified as a "crime of violence" under the 2016 guidelines. (Def.'s Pet. [1] at 9, 11–12, 16.) Section 4B1.2(a)(2) enumerates as a "crime of violence" a "forcible sex offense" that is punishable for a term exceeding one year. The guidelines commentary states, in relevant part, that sexual abuse of a minor only qualifies as a "forcible sex offense" if the abuse was an offense described in 18 U.S.C. § 2241(c) or a state law equivalent to such an offense. U.S. Sentencing Guidelines Manual § 4B1.2 cmt. n.1 (2016). The referenced statute, in turn, enumerates the use of "force or threat" as an element of aggravated sexual abuse. 18 U.S.C. § 2241(a)(1)–(2), 2241(c). Noting the above scheme, Mr. Reddick argues that the Wisconsin statute under which he was convicted—Wis. Stat. § 940.225(3)—does not include an element of force or threat, so it does not qualify as a crime of violence under the U.S.S.G. § 4B1.1. (Pet.'s Reply [24] at 5.)

Even if the court were to assume that Mr. Reddick is correct that his sex offense is not a proper qualifying offense as defined in U.S.S.G. § 4B1.2(a)(2), Mr. Reddick could not show prejudice to substantiate his ineffective-counsel claim. At sentencing, the court noted the record of two other qualifying convictions: the 1995 controlled substance and the 2005 bank robbery convictions. Although this court did not specifically state that the bank robbery qualified as a crime of violence at the sentencing hearing, the Seventh Circuit later confirmed that Mr. Reddick's prior bank robbery does indeed qualify. On direct review, Mr. Reddick's appellate counsel presented Mr. Brown's arguments against the use of each of his prior convictions to the Seventh Circuit in her *Anders* brief, where she noted that, because Reddick had two prior convictions that "clearly qualify as offender predicates," she did not need to address the sexual assault conviction. *Reddick*, Appeal No. 17-3477, "*Anders* brief filed by Ms. Johanna M. Christiansen for Donald

8

Reddick," R. 28 at 21 n.4. The Seventh Circuit agreed. *Reddick*, 759 F. App'x at 514. Notably, the Seventh Circuit stated it would be frivolous to contend that Mr. Reddick's prior bank robbery was not a "crime of violence" under either the 2014 version of the guidelines (in effect at the time of Reddick's 2015 bank robberies) or the 2016 version (used at sentencing). *Id.* at 513 (citing *United States v. Campbell*, 865 F.3d 853, 856 (7th Cir. 2017) and *Armour*, 840 F.3d 904, 909 (7th Cir. 2016)). The Seventh Circuit's finding forecloses Mr. Reddick's claim of prejudice; he cannot show a reasonable probability that his sentence would have been different had the court not considered the 1997 sex offense, because, without that offense, the court still would have been presented with two undoubtedly qualifying convictions.

Mr. Reddick cites to *United States v. Winbush*, 922 F.3d 227, 228 (4th Cir. 2019) for the proposition that a court hearing a § 2255 petition cannot substitute a previously unidentified conviction to sustain a career offender designation, but that case is distinguishable. The § 2255 court in *Winbush* found a previously unidentified conviction in the record to use as a substitute predicate offense, whereas, in Mr. Reddick's case, the parties raised arguments regarding the prior bank robbery at sentencing. Unlike the "substitute" conviction in *Winbush*, Mr. Reddick's prior bank robbery was identified and briefed by the parties in prior proceedings. *Id.*

Mr. Reddick cannot show a reasonable probability that his sentence would have been different had his attorney objected to the use of his sex offense as a prior qualifying conviction under the career-offender guideline. .

### 3. Prior § 2113(a) Bank Robbery

As noted above, the Seventh Circuit has already ruled that it would be frivolous for Mr. Reddick to claim that his 2004 bank robbery is not a qualifying conviction under the career-offender guideline.[6] *Reddick*, 759 F. App'x at 513. Bound by the Seventh Circuit's adjudication,

---

[6] Following his appeal, Mr. Reddick petitioned the Supreme Court to consider whether bank robbery by intimidation categorically is a crime of violence, and the Supreme Court denied his petition. *Reddick v. United States*, 140 S. Ct. 633 (Mem.) (2019).

9

this court may not entertain Mr. Reddick's arguments that his conviction for bank robbery under 18 U.S.C. § 2113(a) is not a crime of violence within the meaning of U.S.S.G. § 4B1.2(a). *See White v. United States*, 371 F.3d 900, 903 (7th Cir. 2004) ("Presented is presented, whether in an *Anders* brief or in any other format; and if an appeal is dismissed as frivolous, that is a binding adjudication that the claims presented in it had no merit at all, rather than an invitation to refile.").

The court notes that whether his prior bank robbery qualifies as a crime of violence appears to have been a source of confusion for Mr. Reddick in his briefing. Although Mr. Reddick was convicted under 18 U.S.C. § 2113(a), he cites *United States v. Davis*, 139 S.Ct. 2319 (2019)[7] and cases from other Circuits to argue that Hobbs Act robbery (for which he was not convicted) is not a crime of violence under the career-offender guidelines. (Pet.'s Reply [24] at 13.) Since the time that Reddick submitted his initial filings [1, 24], the Seventh Circuit, too, has held that Hobbs Act robbery is not a crime of violence under U.S.S.G. § 4B1.2(a).[8] *See Bridges*, 991 F.3d at 800. The Seventh Circuit has treated bank robbery under § 2113(a) differently. Under the pre-2016 guidelines, "bank robbery by intimidation is a crime of violence under the elements clause of the definition in § 4B1.2(a)(1)." *United States v. Campbell*, 865 F.3d 853, 857 (7th Cir. 2017). With regard to the 2016 guidelines, the Seventh Circuit—including in Mr. Reddick's own appeal—has characterized § 2113(a) robbery as falling within the enumerated offense of "robbery" under § 4B1.2(a)(2). *See Campbell*, 865 F.3d at 854 n.1; *United States v. Pasley*, 789 F. App'x 552, 553 (7th Cir. 2020); *Reddick*, 759 F. App'x at 513. Noting the distinction between Hobbs Act robbery and robbery by intimidation, the court reiterates that Mr. Reddick's claim regarding the

---

[7] *Davis*, 139 S.Ct. at 2336, holds that the residual clause of 18 U.S.C. § 924(c)(3)(B)—which is not implicated in this case—is unconstitutionally vague.

[8] The *Bridges* court reasoned that a conviction under the Hobbs Act may be sustained for threatening injury to property, but that is not enough: a crime of violence under the elements clause § 4B1.2(a)(1) requires that the crime involve an element of attempted, threatened, or actual use of physical force against a person. *See Bridges*, 991 F.3d at 800.

use of his § 2113(a) conviction as an enhancing offense lacks merit, so counsel was not ineffective for abstaining from pressing this point.

Finally, while Mr. Reddick challenged the use of his prior bank robbery in his initial filings, he appears to admit in his more recent briefing that his prior bank robbery was a proper qualifying offense. (*See* Claim of Actual Innocence [29] at 3.) By Mr. Reddick's own admission, his claim lacks merit.

**B.      Supervised Release Conditions**

Mr. Reddick challenges several conditions of his supervised release; counsel did not object to these conditions at sentencing and effectively waived the objections. (Pet.'s Reply [24] at 15–19.) *See also Reddick*, 759 F. App'x at 514. The court construes these challenges as ineffective-assistance arguments, but concludes they have no merit. First, Reddick takes issue with the provision that orders him to "participate, at the direction of a probation officer, in a substance abuse treatment program which may include urine testing up to a maximum of 104 tests per year." (Judgment [*66] at 3.) He observes that 18 U.S.C. § 3583(d) lists as a mandatory condition of supervised release abstention from controlled substances, the submission of a drug test within 15 days of release on supervised release, and at least two periodic drug tests thereafter. He urges that (1) the court was not required to order up to 104 drug tests per year as a mandatory condition and (2) should not have imposed such a condition as a discretionary matter because the testing condition was not reasonably related to the factors set out in 18 U.S.C. § 3553(a)(1) or 3553(a)(2)(B)–(D). He also argues that the court impermissibly delegated judicial authority to a probation officer to decide if he should participate in a drug abuse treatment program. (*See* Pet.'s Reply [24] at 17 (citing *United States v. Simpson*, 788 F. App'x 991, 992 (5th Cir. 2020).)

Mr. Reddick cannot succeed on an ineffective assistance of counsel claim on this point. The 104-test figure is the upper limit of the number of urine tests Mr. Reddick may be required to undergo. *See United States v. Downey*, 908 F.3d 205, 207 (2018) ("The discretionary provision

11

addresses a subset of all drug tests, allowing urine tests as many as 104 times per year as part of a substance abuse program."). That actual number of tests will be determined by his probation officer during his supervised release. The Seventh Circuit has held that it is a permissible delegation for the court to allow a probation officer to exercise discretion to order drug tests up to the 104-tests-per-year ceiling. *See United States v. Crisp*, 820 F.3d 910, 916 (7th Cir. 2016). Mr. Reddick's counsel did not err by failing to contest the 104-test ceiling.

Any challenge to the testing requirement as unreasonable would have not traction. District courts have broad authority in establishing provisions of supervised release, and the Seventh Circuit has repeatedly recognized drug testing as a reasonable condition. *See, e.g.*, *United States v. Guy*, 174 F.3d 859, 862 (7th Cir. 1999) (finding no plain error in supervised release order requiring a defendant with history of drug use to submit up to 104 drug tests per year). To support his contention that the drug-testing provision is not reasonably related to the § 3553(a) factors, Mr. Reddick cites a Fifth Circuit case in which the district court improperly imposed a supervised release condition barring the defendant from "use of alcohol and all other intoxicants," despite the absence of evidence that the defendant had any prior history of alcohol or substance use. *See United States v. Herrera-Angeles*, 804 F. App'x 244, 245–47 (5th Cir. 2020). Unlike the defendant's PSR in *Herrera-Angeles*, Mr. Reddick's PSR does reflect a history of drug and alcohol use—notably, in 2015 he reported consuming 40 ounces of beer after work ("but not to intoxication"), and he submitted a urine sample to a probation officer that tested positive for cocaine. (PSR [*37] at 25.) He also has a history of selling controlled substances, even while on parole. (*Id.* at 12, 14.) Mr. Reddick's substance abuse history supports the imposition of the testing provisions of supervised release, so his counsel was not ineffective for waiving objections on this point.

Along with his arguments regarding drug testing, Mr. Reddick challenges the condition of supervised release requiring him to limit his alcohol consumption. He cites *United States v. Bell*, 915 F.3d 574, 578 (8th Cir. 2019), in which the appellate court found the sentencing court abused

12

its discretion by imposing a condition of supervised release prohibiting the defendant from consuming any alcohol or frequenting establishments where alcohol is the primary item for sale. (*See* Pet.'s Reply [24] at 17.)  In that case, the sentencing court erred by citing its "general experience with prior offenders" to justify the provision rather than the defendant's own history. *Id.*  In this case, the court ordered Mr. Reddick to "refrain from any excessive use of alcohol." (Tr. of Sentencing H'rg [*79] at 34:4–8.)  This less stringent standard was reasonably connected to Mr. Reddick's personal characteristics, as his fiancée reported that he "was drinking excessively during the time period he committed the instant bank robberies."  (PSR [*37] at 26; Tr. of Sentencing H'rg [*79] at 24:16–19.)  Although it was reasonable for the court to impose a restriction on excessive drinking, the court recognizes that the written judgment in this case includes a scrivener's error: the box defining "excessive use of alcohol" as "having a blood alcohol concentration greater than 0.08" is not checked as it should have been.  *See United States v. Hudson*, 908 F.3d 1083, 1084 (7th Cir. 2018).  The court will amend the written judgment to correct this error.  *See id.* at 1085–86.

Mr. Reddick additionally challenges the provision of his supervised release that requires him "to remain in the jurisdiction" where he is supervised, "unless granted permission to leave by the court or a probation officer."  (Judgment [*66] at 4.)  Mr. Reddick cites to *United States v. Collins*, 939 F.3d 892, 898 (7th Cir. 2019), in which the Seventh Circuit "suggest[ed]" that the Executive Committee of the U.S. District Court for the Northern District of Illinois update its judgment form to substitute the term "federal judicial district" for the word "jurisdiction."  In *Collins*, the Seventh Circuit merely issued a "remand with instructions for the district court to amend its written judgment" to make the term substitution.  *Id.*  The court will amend Mr. Reddick's written judgment with the same substitution.[9]

---

[9] Mr. Reddick also cites an unreported Ninth Circuit decision, *United States v. Clouse*, 789 F. App'x. 23, 25 (9th Cir. 2019) where the Court of Appeals vacated two vague special conditions of the defendant's supervised release: a place restriction and a pornography restriction. The court has already addressed Mr. Reddick's place restriction concern, and his supervised

13

Although Mr. Reddick is not entitled to relief under § 2255 for ineffective assistance of counsel, the court notes that denial of the present motion is without prejudice to his ability to move for modification of the terms of supervised release under 18 U.S.C. § 3583(e)(2).

## II.    Ex Post Facto Argument

In his petition, Mr. Reddick rehashes an argument he brought before the Seventh Circuit: he claims the Ex Post Facto clause bars this court from considering offenses committed prior to 2016 count as qualifying offenses under the 2016 amended guidelines. (Def.'s Pet. [1] at 9.) The Seventh Circuit already deemed this argument frivolous. Because the law-of-the-case doctrine "forbid[s] a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal," the court declines to consider this issue. *White*, 371 F.3d at 902.

## III.   First Step Act

In his reply brief, Mr. Reddick argues that the First Step Act, Pub. L. No, 115-391, 132 Stat. 594, affects his career-offender status. (Pet.'s Reply [24] at 8–13.) As the court understands this argument, Mr. Reddick believes the First Step Act is a change in the law that is retroactive on collateral review, thus permitting the court to reexamine the Seventh Circuit's finding that he is a career offender under the guidelines. Mr. Reddick's reliance on the First Step Act is misplaced. The First Step Act did not affect the definition of offenses that qualify for a career-offender enhancement under U.S.S.G. § 4B1.1. Instead, it altered the requirements for an enhanced sentence under § 841(b)(1)(B), which was never at issue in Mr. Reddick's case.[10]

---

release does not involve a condition regarding pornography. His citation to a case concerning a condition of release requiring 300 hours of community service is similarly inapposite. (*See* Pet.'s Reply [24] at 18 (citing *United States v. Parkins*, 935 F.3d 63 (2d Cir. 2019).)

[10]     Mr. Reddick contends that "The First Step Act changed the conditions and types of prior offenses, i.e., 10 years or more, that now trigger enhanced penalties." (Pet.'s Reply [24] at 10.) The First Step Act changed § 841(b)(1)(B) to permit enhanced penalties for a person who violated § 841(a)(1) following a prior conviction for a "serious drug offense." First Step Act § 401(a)(2)(B), 132 Stat. at 5221. The First Step Act defines a "serious drug offense" with reference to 18 U.S.C. § 924(e), which, in turn, defines a "serious drug offense" to mean, among other things, an offense under the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46 "for which a maximum term of imprisonment of ten years

To the extent Mr. Reddick wishes to seek a sentence reduction under section 404 of the First Step Act, the court notes he would not be eligible for such relief.[11] Section 404(b) gives a court discretion to reduce the sentence of a defendant previously convicted of a "covered offense" as defined in section 404(a). *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020). Mr. Reddick pleaded guilty to bank robbery, which is not a "covered offense" under the First Step Act.[12] *See id.*

In short, the First Step Act has no effect on Mr. Reddick's § 2255 petition.

## IV. Compassionate Release

In his reply brief, Mr. Reddick asks the court "to consider a sentence reduction" under 18 U.S.C. § 3582(c)(1)(A)(i) due to his post-sentence rehabilitation, his own health concerns, and his daughter's medical conditions. (*See* Pet.'s Reply [24] at 21–22.) The present motion is not the proper vehicle for raising such a claim, as a motion for compassionate release under § 3582(c) "is of a fundamentally different character than an appeal or collateral attack." *United States v. Monroe*, 580 F.3d 552, 557 (7th Cir. 2009). Mr. Reddick's request for compassionate release should be made in a separate motion. The court reminds Mr. Reddick that § 3582(c)(1)(A) requires a movant to exhaust administrative remedies by seeking such relief within the Bureau of Prisons and allowing 30 days for the warden's response. *See United States v. Sanford*, 986 F.3d

---

or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(i). None of these provisions are relevant here, as Mr. Reddick's sentence was not statutorily enhanced based on a "serious drug felony." (*See* Def.'s Pet. [1] at 11–13; Pet.'s Reply [24] at 10.)

[11] The case citations in Mr. Reddick's reply brief suggest that he does intend to seek relief under the First Step Act. *See, e.g.*, *United States v.* Shaw, 957 F.3d 734, 737–38; *United States v. Beamus*, 943 F.3d 789, 790 (6th Cir. 2019) (per curiam); *United States v. Hadley*, 389 F. Supp. 3d 1043, 1043 (M.D. Fla. 2019).

[12] Within the meaning of the First Step Act, a "covered offense" is a conviction under 21 U.S.C. §§ 841, 844 (Controlled Substance Act) and 21 U.S.C. § 960 (Controlled Substances Import and Export Act), the penalties of which were altered by the Fair Sentencing Act, Pub. L. No. 1110229, 124 Stat. 2372 (2020).

779, 782 (7th Cir. 2021). His request that the court consider compassionate release on this motion is denied without prejudice.

**V.     Restitution**

In Ground III of his petition, Mr. Reddick raises a concern about his restitution obligation. (Def.'s Pet. [1] at 10.) Specifically, the judgment required payment of $9,200.00 in restitution [*66], but the court ordered that seized funds in the amount of $7,462.61 be applied to that total [*64]. Mr. Reddick appears to believe he is nevertheless being held responsible for the full amount of $9,200.00. The court directs that the United States Attorney provide an accounting of amounts owed by Mr. Reddick within 14 days.

## CONCLUSION

For the reasons stated above, "the motion and the files and records of the conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (quoting 28 U.S.C. § 2255). Therefore, an evidentiary hearing is not necessary. *See id.* Mr. Reddick's motion to vacate, set aside or correct his sentence is **DENIED**. The court will, however, enter an amended judgment as described herein and directs the United States to provide an accounting concerning Mr. Reddick's restitution payments. Because reasonable jurists would not question the court's resolution of this petition, the court declines to issue a certificate of appealability.

ENTER:

Dated: November 28, 2022

_____
REBECCA R. PALLMEYER
United States District Judge